UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
ELAN OVED,

                Plaintiffs,                **MEMORANDUM & ORDER**

    -against-

                                            17-CV-1348 (DRH)(GRB)

DANIEL E. WEINER,

                Defendant.
-------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**
Law Offices of Elliot J. Blumenthal, PLLC
483 Chestnut Street
Cedarhurst, New York 11516
By:    Elliot J. Blumenthal, Esq.

**For Defendant:**
Jaspan Schlesinger LLP
300 Garden City Plaza, 5th Floor
Garden City, New York 11530
By:    Steven R. Schlesinger, Esq.
        Shannon E. Boettjer, Esq.
        Natasha Shishov, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff, Elan Oved ("Plaintiff" or "Oved") commenced this action on March 10, 2017 against defendant Daniel E. Weiner ("Defendant" or "Weiner") basing jurisdiction on diversity of citizenship and asserting claims under state law for tortious interference with business relationship, tortious interference with prospective business relationship, breach of contract, unjust enrichment, and indemnification. Presently before the Court is Defendant's motion to

dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

### I. The Complaint

The following allegations are taken from the complaint ("Comp.") and presumed true for purposes of this motion.

#### A. Allegations Relating to Plaintiff's Relationship with Defendant's Father

Plaintiff and his family have been long time friends of Defendant's father, Louis Weiner ("Louis"). Louis is the founder of Lone Star Equities Inc. ("LSE"), a multi-faceted commercial real estate company with retail, office and industrial properties in more than 20 states. (Compl. ¶¶7-8.) Until 2011, Oved was an owner of Top Fortune Asia Limited ("Top Fortune"), a trading company that manufactured clothing sold to major retailers throughout the United States and the world. In or about September 2011 Louis tendered to Oved "portions of his business ventures, including a ten percent (10%) share in LSE and other ventures, in return for a forty (40%) percent stake in Top Fortune and other consideration." (*Id.* ¶¶ 10, 17-18.) Under the agreement reached between Oved and Louis, the 40% interest in Top Fortune would be transferred to Louis' designee, the Weiner Family Foundation (the "Foundation"). In accordance with the agreement, Louis, on behalf of the Foundation, executed an Instrument of Transfer in September 2011 whereby 40% of Top Fortune was transferred to the foundation. Louis also executed and

---

[1]Although Defendant's notice of motion refers to Rules 12(b)(3) and (6), his memorandum references Rule 12(b)(1) and (6). It is apparent that the reference to Rule 12(b)(3) was in error. Accordingly, the Court will address the motion as pursuant to Rules 12(b)(1) and (6).

delivered LSE stock certificate no. 5 (the "Stock Certificate") issuing 100 of the 1,000 shares in LSE to Oved. The Stock Certificate was prepared by Louis' attorney and signed in her presence and that of Oved. (*Id.* ¶¶ 18-20.) The following month, Louis and Oven signed a document entitled "Delegation of Authority" which stated that Louis is a 90% shareholder of LSE and Oved is a 10% shareholder of LSE. Oved and Louis also agreed that "in return for Plaintiff's many years of past work for Louis Werner's business and his anticipated management and continued work for Louis Wiener's businesses and investments, Louis Weiner would take out a $5 million life insurance policy on himself with Oved as beneficiary." Upon Louis's death, Oved "could either take the proceeds of the policy or transfer the proceeds to a trust maintained by [Defendant] in exchange for an additional 10% ownership stake in LSE." (*Id.* ¶¶ 19-22.)

Over the next five years Louis never disputed or denied Oved's interest in LSE and introduced Oved as a "10% owner in LSE and a partner in their joint businesses" to various business associates and to Louis's employees. At a staff meeting on June 29, 2015, Louis announced that he had "decided to turn over the leadership of all our companies to [] Oved" with "the change in top management . . . effective immediately." (Compl. ¶¶ 23-24.)

At the time the announcement, Defendant was not even shareholder of LSE and was not involved in the day to day operations of Louis' business affairs. Feeling threatened by his father's trust in Oved and afraid his future involvement in his father's business empire was at risk, Defendant "set out to sabotage the relationship" between his father and Oved. Defendant "orchestrated a series of zero consideration transfers of real estate interest to various entities he controlled as far back as December 1978." (Compl. ¶¶ 25-29.) On August 24, 2015, Defendant hastily called a staff meeting and "undid everything his father had done at the June 29, 2015 staff

meeting by stating that Louis Weiner was back in charge and that if Louis Weiner was unavailable [Defendant] himself was to be contacted regarding management decisions." Although Louis was present at the August 24 meeting, "he was silent, stoic, and crestfallen, having been pushed to the side by his son, the Defendant, even though Defendant had no interest in LSE or any of the other entities which [Oved] had been managing for the past five years." (*Id*. ¶¶ 30-31.) Defendant also planned and executed the surreptitious removal of LSE's files from the LSE office, including seven cabinets full of documents. He also caused the mail, including Oved's mail, to be forwarded to a new office location in Valley Stream, resulting in LSE breaching a lease agreement LSE had with a company controlled by Plaintiff. Defendant then secreted his father to a residence in Florida to insure that he (Defendant) would maintain full control over his father and his father's wealth and froze Plaintiff out of the operations and decision making of LSE and the other business. He caused his father "to file a lawsuit in Nassau County Supreme Court against Plaintiff alleging, inter alia, that Plaintiff forged the stock certificate showing his 10% stake in LSE." (*Id*. ¶¶ 32-39.) ["T]he operations of LSE and the other entities have suffered in that Defendant has failed to properly manage the new York office and the LSE website. The vacancy rates in the properties have grown, [and] property managers have resigned and not been replace . . . ." (*Id*. ¶¶38.)

      **B.**    **Allegations Relating to Contract between Plaintiff and Defendant**

In or about the end of 2008, Defendant told Plaintiff he needed to show rental income of approximately $2,000.00 for his primary residence in Lawrence and requested that Plaintiff pay him $2,000.00 a month as "rent" and that that money would be reimbursed to Plaintiff. "For the next several years" Oved paid Defendant $2,000.00 per month for rent for Defendant's home in

Lawrence, New York, yet never occupied it. In August 2011, Defendant paid Plaintiff $90,464.00, representing approximately 45 months of rental payments. Oved stopped making payments after he learned in late July 2013 that the payments he had been making "were an attempt by Defendant to illegally engage in tax evasion from the State of New York, by using Plaintiff's payments to prove his claim that he was not in fact a New York State resident." Plaintiff has demanded both reimbursement of the $48,000.00 still owed to him as well as indemnification should any civil liability be imposed upon Mr. Oved for his unwitting assistance in Defendant's tax evasion scheme. (Comp. ¶¶ 40-46.)

      C.     **Causes of Action Asserted**

Plaintiff has asserted a claim for tortious interference with business relationship in that with full knowledge of the contractual relationship between Oved and Louis, Defendant sabotaged that relationship by removing files, "wrest[ed] control" of the business from Plaintiff and caused Louis to breach his contractual relationship with Oved. (Compl. ¶¶ 47-52.) He also asserts a claim for tortious interference with prospective business relationship as Defendant interfered with the business relationship between Oved and Louis "with the sole purpose of harming [Plaintiff's] ongoing relationship with [Louis], for fear that Louis['s] []trust in Oved and his business relationship with Oved, although beneficial to Louis [], could ultimately harm Defendant's opportunity to seize control of his father's substantial assets and wealth." (*Id*. ¶¶ 55-58.)

Based on the allegations regarding the payment of "rent" by Plaintiff to Defendant, Plaintiff has asserted a claim for breach of contract, unjust enrichment, and indemnification.

## II. The State Court Action

It is alleged in the complaint that Defendant caused Louis to commence an action against Plaintiff in Nassau County, Supreme Court. *See Weiner v. Oved*, Index No, 606466/2015 (Sup. Ct. Nassau County) (the "State Court Action"). Preliminarily, the Court notes that it may consider the pleadings in the state court action "not for the truth of the matters asserted in [this] other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see Staehrv. Hartford Fin. Servs. Group*, 547 F.3d 406, 424-25 (2d Cir. 2008) (holding it was proper for district court to take judicial notice of, *inter alia*, state court complaints.)

According to the amended complaint in the State Court Action, Oved insinuated himself into the personal and business affairs of Louis, who turned 91 in January 2016, in order to provide himself with access to Louis and LSE's records and financial resources. He then transferred, borrowed, and stole in excess of six million dollars from Louis. Oved used that access to fabricate a story that he (and his wife) possess an ownership interest in LSE's stock when they do not. (*See* Ex. D to Weiner Aff.)

Oved's answer in the State Court Action includes a number of counterclaims. The first counterclaim seeks a declaratory judgment that 10% of LSE was transferred to Oved in September 2011 and that since the date of transfer, he has and continues to be a 10% shareholder of LSE. The second counterclaim seeks specific performance of the agreement between Oved and Louis whereby Oved transferred 40% of Top Fortune to Louis in exchange for 10% of LSE. The third counterclaim asserts that Louis breached the foregoing agreement. The fourth counterclaim alleges breach of fiduciary duty in that no distribution from LSE have been made to

Oved while such distributions have been made to Louis or his designees. Other counterclaims include claims for an accounting, conversion, and imposition of a constructive trust. (*See* Ex. 3 to Schlesinger Declar.)

## DISCUSSION

I. Legal Standards

    A. **Rule 12(b)(1) Motion**

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.' " *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

A motion to dismiss based the abstention doctrine is considered pursuant to Fed. R. Civ. P. 12(b)(1). *U.S. v. Blake*, 942 F. Supp. 2d 285, 292 (E.D.N.Y. 2013); *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332 (E.D.N.Y. 2008).

**B.     Rule 12(b)(6) Motion**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at

556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

In making its determination, the Court is confined to "the allegations contained within the four corners of [the] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Against this standard, *none* of the materials submitted by the parties, including the affidavits and documents, will be considered by this Court in deciding the Rule 12(b)(6) motion.[2]

## II. The Rule 12(b)(1) Motion

### A. Diversity Jurisdiction

#### 1. Principles Regarding Diversity Jurisdiction

Diversity jurisdiction exists when all plaintiffs are citizens of states diverse from those of all defendants. *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772

---

[2] The Court notes that Defendant failed to comply with the direction in this Court's Order entered April 10, 2017 that "to the extent the motion to dismiss is premised on any document(s) not included in the complaint, the memorandum of law must specifically address whether each such document is properly considered on a motion to dismiss and include citation to relevant authority to support its consideration." This failure provides another basis for non-consideration of the submitted materials.

F.3d 111, 117-18 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)). The party asserting diversity jurisdiction has the burden to prove the same. *Pennsylvania Pub. Sch. Employees' Ret. Sys.*, 772 F.3d at 118. "[D]iversity of citizenship should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record[.]" *Leveraged Leasing Admin. Corp. v. PacificCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) (internal quotation marks omitted). "A conclusory allegation in the Complaint regarding diversity of citizenship does not extinguish the Court's responsibility to determine, on its own review of the pleadings, whether subject matter jurisdiction exists." *Richmond v. International Bus. Machs. Corp.*, 919 F. Supp. 107, 108 (E.D.N.Y. 1996), *aff'd*, 841 F.2d 1116 (2d Cir. 1988).

For the purpose of diversity jurisdiction, "a statement of the parties' residence is insufficient to establish their citizenship." *Davis v. Cannick*, 2015 WL 1954491, at *2 (E.D.N.Y. 2015); *Young-Gibson v. Patel*, 476 Fed. App'x 482, 483 (2d Cir. June 12, 2012)). "For purposes of diversity jurisdiction, [an individual's] citizenship depends on his domicile." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998). "A party's domicile is 'the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Chen v. Sun*, 2016 WL 270869, at *2 (S.D.N.Y. Jan. 21, 2016) (quoting *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)). "Where there is evidence indicating that a party has more than one residence, or the residence is unclear, the Court should look to the party's intent." *Id.* (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991)). In determining a party's intent, courts consider many factors, including:

> current residence[;] voting registration[;] driver's license and

> automobile registration[;] location of brokerage and bank accounts[;] membership in fraternal organizations, churches, and other associations[;] places of employment or business[;] . . . payment of taxes[;] . . . whether a person owns or rents his place of residence[;] the nature of the residence (i.e., how permanent the living arrangement appears)[;] . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc. . . .

*Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009).

### 2. The Motion to Dismiss for Lack of Diversity Jurisdiction is Denied and Plaintiff is Directed to File an Amended Complaint

In the complaint, Plaintiff alleges that he "resides" in the state of New York and Defendant "resides" in the state of Florida. While these allegation are insufficient to demonstrate diversity of citizenship, other parts of the record demonstrate that a good faith basis for asserting diversity does exist.

Firstly, the Court notes that although Defendant submitted an affidavit in support of his motion to dismiss, he does not forthrightly assert that at the time this action was commenced he was domiciled in the State of New York or even that he was not domiciled in the State of Florida. Rather, he attaches a copy of the first page of his 2015 New York State Resident Income Tax Return and his 2015 Federal Return and states that his 2016 has not yet been filed.[3] Secondly, Plaintiff has submitted evidence that supports the assertion that Defendant is domiciled in the State of Florida, to wit: records showing Defendant is a registered voter in the State of Florida and that Defendant has been claiming the Florida homestead exemption, which is available only to "permanent residents," *see* Fla. Stat. § 196.031. Viewed against this backdrop, Plaintiff has a

---

[3] The Court notes that the materials before it leads to the conclusion that the address listed on the submitted tax returns is an office building and not a residence. (*See* Ex. L to Oved. Declar.)

good faith basis for asserting that diversity jurisdiction existed at the time this action was commenced in 2017. Accordingly, Plaintiff may file an amended complaint limited to revising the allegations as to the citizenship of the parties.

### B. Abstention

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. 800, 813 (1976). This is because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id*. at 817. Thus, there is a "heavy presumption favoring the exercise of jurisdiction. *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 (2d Cir. 1986). The Second Circuit has characterized the abstention doctrine as "compris[ing] a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction." *Woodford v. Community Action Agency of Green County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (internal quotation marks omitted). One such exception was announced in *Colorado River* wherein the Court announced that "while the [general] rule is that the pendency of an action in the state court is no bar to proceedings concerning the matter in the Federal court having jurisdiction" a court may abstain in order to conserve federal judicial resources where resolution of the state matter may result in "comprehensive disposition of the litigation." *Colorado River*, 424 U.S. at 817; *see Woodford*, 239 F.3d at 522.

The *Colorado River* abstention analysis begins with a determination of whether the concurrent proceedings are parallel; parallelism is a "necessary prerequisite." *Smulley v. Mutual of Omaha Bank*, 634 Fed. App'x 335, 337 (2d Cir. 2016) (citing *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). If the proceedings are parallel, then the following six factors

should be considered.

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less convenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford*, 239 F.3d at 522 (internal citations omitted). "No one factor is necessarily determinative . . . . Only the clearest of justifications will warrant dismissal. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15–16 (1983) (quoting *Colorado River*, 424 U.S. at 818-19) (emphasis in *Moses H. Cone* omitted). "Where a *Colorado River* factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it." *Niagara Mohawk Power Corp v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 101 (2d Cir. 2012) (internal quotation marks omitted).

### 1. Are the Actions Parallel?

"Actions are 'parallel when substantially the same parties are contemporaneously litigating the same issue in another forum.'" *Smulley*, 634 Fed. App'x 335, 337 (2d Cir. 2016) (quoting *Niagara Mohawk*, 673 F.3d at 100); *see Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum") (internal quotation marks omitted); *Blake*, 942 F. Supp.2d at 293 ("Cases are considered parallel when the main issue in the case is the subject of already pending litigation.") (internal quotation marks omitted). "Perfect symmetry of parties and issues is not required." *United States v. Blake*, 942 F. Supp.2d 285, 297 (E.D.N.Y. 2013) (citations omitted). Abstention may be appropriate "notwithstanding the nonidentity of the

parties" in cases where interests are "congruent." *Canaday v. Koch*, 608 F. Supp. 1460, 1475 (S.D.N.Y.), *aff'd*, 768 F.2d 501 (2d Cir. 1985).

That Defendant is not named party to the State Court Action is not determinative as his interests appear to be congruent to that of his father's in the state court action. The requirement that the action involve "substantially" the same parties has been met.

Turning to whether substantially the same issues are involved, it is true that Plaintiff's tortious interference claims rest on the same factual allegations as a number of the counterclaims asserted by Oved in the State Court Action (*see* Ex. 3 to Schlesinger Declar.), i.e., Defendant's father transferred to Oved a 10% interest in LSE in September 2011. However, in order to be parallel, there must be "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 287 (E.D.N.Y. 2013) (internal quotation marks and citation omitted). "Any doubt regarding the nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." *Id*. at 288 (internal quotation marks and citation omitted). Here, the State Court Action will not dispose of all the claims presented in this case.

First, what the parties refer to as the tax related claims, viz. the breach of contract, indemnification, and unjust enrichment claims, are unrelated to the State Court Action. Indeed, Defendant appears to recognize this fact as his argument for *Colorado River* abstention is premised on the condition that the tax related claims are dismissed. (*See* Def.'s Mem at p. 20 ("Abstention from the tortious interference claims is necessary if the tax related claims are dismissed") (initial capitalizations omitted).)

Second, although the issue of whether Louis transferred a 10% ownership interest in LSE

to Oved is a central issue in both cases, its resolution will not necessarily dispose of the claims in this case. For example, if the state court were to determine that there was a contract for the transfer of LSE stock to Oved, the issue of whether Weiner tortiously interfered with that relationship by causing his father to file the State Court Action would still exist.

Having determined that the two actions are not parallel, the motion to dismiss based on *Colorado River* abstention is denied. The Court will now address Defendant's Rule 12(b)(6) motion.

### III. The Rule 12(b)(6) Motion

#### A. The Claim for Tortious Interference With Contract

"To state a claim for tortious interference with contract under New York law, a plaintiff must demonstrate the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Symquest Grp., Inc. v. Cannon U.S.A., Inc.*, 186 F. Supp. 3d 257, 266 (E.D.N.Y. 2016); *accord Restis v. American Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 727 (S.D.N.Y. 2014); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006). Further, the Plaintiff must assert that but for the activities of the Defendants, there would not have been a breach of the contract. Restis, 53 F. Supp. 3d at 727.

Plaintiff has sufficiently alleged a claim for intentional interference with contract. As identified in the complaint, there was a contract between Plaintiff and Louis pursuant to which Plaintiff received a 10% ownership in LSE, of which Defendant had knowledge. It is further alleged that Defendant interfered with that contract by, inter alia, causing his father to file the

State Court Action alleging that the Plaintiff forged the stock certificate for his 10% stake. The element of but for causation is asserted as it is alleged that "Defendant has in large part succeeded in causing Louis Weiner to breach his contractual relationship with Plaintiff . . . as [he] has been excluded from the business ever since." (Compl. 50.)

The motion to dismiss the claim for tortious interference with business relationship for failure to state a claim is denied.

**B. The Claim for Tortious Interference with Prospective Business Relationships**

In order to state a claim for tortious interference with prospective business relations, a plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (internal quotation marks and citation omitted); *see Wolff v. Rare Medium, Inc.*, 65 Fed. App'x 736, 739 (2d Cir. 2003) (summary order). In order to survive a motion to dismiss, the plaintiff must allege that it was "actually and wrongfully prevented from entering into or continuing in a specific business relationship." *Korn v. Princz*, 641 N.Y.S.2d 283, 283 (N.Y. App. Div. 1996) (emphasis added); *see also DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 115 (2d Cir. 2010) ("[T]he complaint fails entirely to describe any third party with whom [the plaintiff] had prospective business relations to be interfered with. The lack of such an allegation is fatal to this claim." (internal citation omitted)); *Bus. Networks of N.Y., Inc. v. Complete Network Solutions, Inc.*, 696 N.Y.S.2d 433, 435 (N.Y. App. Div. 1999) ("Concerning the motion to dismiss, the cause of action for tortious interference with prospective business relations should have been

dismissed for failure to allege any specific prospective relationship with which defendants interfered."); *accord Pacheco v. United Med. Assocs., P.C.*, 759 N.Y.S.2d 556, 559 (N.Y. App. Div. 2003).

Defendant's seeks dismissal of this claim arguing that the complaint "fails to assert that Defendant acted solely out of malice or even that malice was a motivating factor." (Def.'s Mem. at 14.) However, as set forth earlier, the third element is that the defendant "acted solely out of malice," or "used dishonest, unfair, or improper means." At the very least Plaintiff has alleged improper means, to wit "removing files from the office and wresting control of the business without even having any ownership interest" and "secret[ing] Louis in Florida." (Comp. ¶¶ 36, 49.)

The motion to dismiss the claim for tortious interference with prospective business relationship is denied.

### C. The Breach of Contract and Unjust Enrichment Claims

Defendant proffers two arguments in support of dismissal of the breach of contract claim. First, the purpose of the "agreement" was to allegedly carry out illegal activity and therefore it fails as a matter of law. Said illegality, it is argued, also bars the claim for unjust enrichment. Second, there is an absence of consideration inasmuch as Plaintiff asserts "he made 'rental payments' without actually having lived in Defendant's 'primary residence in Lawrence New York' and did not receive anything in return for making these alleged payments." (Def.'s Mem. at 15-16.)

Taking the latter argument first, it fails to give credence to all the allegations in the Complaint. Specifically, it is alleged that "Defendant requested that Plaintiff pay him $2,000 per

month as 'rent' for the Lawrence residence and that the money would be reimbursed to Plaintiff."
(Compl. ¶40.) While the pleading is somewhat inartful, fairly read it alleges that Defendant promised to pay Plaintiff the monies Plaintiff lent him. A promise to repay constitutes adequate consideration.

Nor does Defendant's illegality argument warrant dismissal of this claim. It is specifically alleged in the Complaint that Plaintiff was unaware of the true purpose of the agreement. Thus, while Defendant, in securing the funds, may have had an illegal purpose, that purpose was not shared by Plaintiff. In such a situation, the "illegality" does not warrant non-enforcement. If it did, a bank that extended a loan to one who then used the loan proceeds to bribe a public official would be barred from securing repayment. Such is not the case. Moreover, "[a]sserting illegality to avoid enforcement of a contract constitutes an affirmative defense." *Dervan v. Gordian Group LLC*, 2017 WL 819494,*8 (S.D.N.Y. Feb. 28, 2017) (citing, inter alia, N.Y. CPLR § 3018(b) (listing "illegality by statute or common law" as an affirmative defense.)[4]

The motion to dismiss the breach of contract and unjust enrichment claims is denied.

### D. The Indemnification Claim

The last cause of action to be addressed it that for indemnification "for any and all costs and/or liabilities that Plaintiff . . . may incur as a result of Defendant's improper actions [to evade New York State residence taxes]." (Compl. ¶¶ 70-71.) Although not clear from the complaint whether the claim for indemnification is contractual or pursuant to common law, it is clear from Plaintiff's memorandum that it is for contractual indemnification. (*See* Pl.'s Mem. at 11.)

---

[4] The Court notes parenthetically that Defendant asserts that the claim that the arrangement was for the purpose of avoiding New York resident income tax is without merit as he "dutifully filed all New York Resident Income Tax returns and paid [his]

Accordingly, the Court will address it as such.

"A party is entitled to full contractual indemnification provided the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances."*Drewinski v. Atlantic Scaffold & Ladder Co., Inc.,*, 70 N.Y.2d 774 (1987). Plaintiff's argument against dismissal of this claim is that "the circumstances of the agreement were that Elan Oved would advance money and be repaid. Certainly, Mr. Oved's contract with Daniel Wiener qualifies as having a clear expression of an intention to indemnify." The Court is underwhelmed with this argument. Indeed, it borders on the frivolous.

There is nothing in the complaint to support a claim for contractual indemnification and therefore the motion to dismiss this claim is granted.

### E. Arguments Raised for the First time in Defendant's Reply

One other matter needs to be addressed. In his reply, Defendant raised for the first time that this action should be dismissed for failure to include necessary parties, i.e. Louis and LSE. As Defendant failed to raise this issue in its initial memorandum, the Court declines to address it.

### CONCLUSION

Defendant's motion to dismiss is granted as to the claim for indemnification but is otherwise denied. Plaintiff shall file an amended complaint limited to revising the allegations as to the citizenship of the parties on or before January 5, 2018.

**SO ORDERED.**

Dated: Central Islip, New York
       December 21, 2017                    /s/ Denis R. Hurley
                                                                      Denis R. Hurley
                                                                      United States District Judge